## Cross *v.* Bell & *als.*, Admr's of Bell.

Illegal interest may be recovered back in an action for money had and received, and no special demand is necessary before suit brought.

Where, upon notice, and refusal to produce books and papers, which are under the control of a party, and the evidence in regard to their contents is imperfect and uncertain, every intendment and presumption is to be made against the party who might remove all doubt by producing the books.

The plaintiff brought his action for two hundred dollars, alleged to have been paid as usury. It appeared that he had agreed to pay the defendant eighteen hundred dollars for a third person; that the defendant wrote notes for two thousand dollars, and that upon the plaintiff's objecting that they were too large, the defendant replied, "there is our account and other deal — all is put

Cross *v.* Bell.

in." The plaintiff signed the notes and afterwards paid them. At the trial the plaintiff called for the defendant's books, but they were not produced; and the court instructed the jury that they might infer, from the fact that the books were not produced, that they would not aid the defence, if produced.—*Held,* that the instructions might be sustained.

ASSUMPSIT, for money had and received, commenced against the deceased in his life-time, to recover two hundred dollars alleged to have been paid him as usury.

It appeared that the plaintiff, having agreed to pay said Bell eighteen hundred dollars, due him from one Gannett, called on him with Gannett for that purpose; that Bell wrote notes for Cross to sign, amounting to two thousand dollars, and that upon Cross objecting that the notes were too large, Bell replied: ' There is our account and other deal — all is put in.' Whereupon the plaintiff signed the notes, which he afterwards paid without suit.

The plaintiff now contends that the two hundred dollars, thus included in the notes, was for illegal interest, and seeks to recover it here.

To show that there were no accounts between the parties, the plaintiff called on the defendants at the trial, to produce the account books of the deceased, which was not done, although the defendants' counsel admitted notice to produce them, given before the term.

The court charged the jury that they might infer, from the fact that the books were not produced, that they would not aid the defence, if produced.

The court also charged the jury, that it was not necessary for the plaintiff to make or prove a demand upon the defendant before suit, in order to recover in this action.

To which instructions the defendants excepted, and a verdict being rendered for the plaintiff, it was ordered that the questions arising on the case be transferred to the Supreme Judicial Court.

*Chapman* and *Quincy,* for the defendants.

The payment by Cross was a voluntary one, with a knowledge of all the facts in relation to it, without coersion or compulsion

of any kind, and cannot therefore be recovered back. *Bendson & al.* v. *Monroe*, 7 Cush. 130.

The court erred in charging the jury that they might infer from the fact that the books were not produced, that they would not aid the defence, if produced. Non-production of books upon notice has no other legal effect than to admit the other party to prove their contents by parol, and does not authorize any inference against the party failing to produce. Before any inference is made against a party for the non-production of books or papers on notice, it must be shown that they are under his control, and some general evidence of such parts of their contents as are applicable to the case, must be given. 1 Greenl. Ev., sec. 37 ; 3 Cowen's Phill. Notes 1192 ; *Cooper* v. *Gibbon*, 3 Camp. 363 ; *Life and Fire Insurance Co.* v. *The Mechanic's Fire Insurance Co.*, 7 Wendell 31 ; Roscoe Crim. Ev. 11.

The only consequence of giving notice to produce the books of the defendants in this case, was, that it entitled the plaintiff to offer parol evidence that the books were in the hands of the defendants, and to go into secondary evidence of their contents ; and did not authorize any inference whatever against the defendants' failing to produce them.

The court erred in charging the jury that it was not necessary for the plaintiff to make or prove a demand before suit. The plaintiff voluntarily placed the money in the hands of the defendants. There was no expectation on the part of the defendant to repay it, or on the part of the plaintiff to reclaim it. There was no express promise to repay it, or implied one from the facts. The money was rightfully in the hands of the defendant by the plaintiff's assent. It was necessary, then, before he could place the defendant in the wrong for detaining it, to make a demand. A demand is necessary before suit, to recover money collected by an attorney ; *Taylor* v. *Bates*, 5 Cowen 376. So of a factor or consignee of goods ; *Ferris* v. *Paris*, 10 Johns. 285. So of a sheriff ; *Jeffries* v. *Shepherd*, 3 Barn. & Ald. 696. So of an auctioneer ; *Cooley* v. *Bates*, 24 Wendell 203.

The plaintiff's remedy, if any, is by a *qui tam* action, and not

in this form of action. We ask the court to revise the case of *Webber* v. *Green*, 2 N. H. 333. By sec. 2, chap. 203, Comp. Stat., it is enacted that every person who shall, directly or indirectly, receive interest at a higher rate than six per cent. per annum, shall forfeit for every such offence three times the sum so received. The plaintiff, being in equal fault with the defendants, by agreeing and voluntarily paying the usurious interest, should not be permitted to recover the money back in this form of action.

*Felton* and *Hibbard*, for the plaintiff.

The plaintiff contends that no demand was necessary. The receiving of the money was wrongful, and contrary to law. *Bussing* v. *Rice*, 2 Cush. 48; *Thurston* v. *Blanchard*, 22 Pick. 18; *Woodbury* v. *Long*, 8 Pick. 542; *Willie* v. *Green*, 2 N. H. 333–9; *Wiggin* v. *Foss*, 4 N. H. 294.

" It is a familiar general rule that on the common money counts, proving the money had and received to the plaintiff's use, raises an implied promise to pay on demand," and the count closes with a *sæpe requisitus*, " but no proof of a demand is necessary to support the averment." *Hunt* v. *Nevers*, 15 Pick. 505; *Clark* v. *Moody*, 17 Mass. 145; *Dill* v. *Wareham*, 7 Metcalf 447, 448.

As to the inference from the non-production of the defendants' books, we say that the jury were, in substance, instructed that they might make a mere negative inference, or, more properly, no inference at all. So far as the defendant's interest was concerned, it is the same thing whether the jury inferred that the books would not aid the defence, *or did not infer that they would aid the defence;* and, even without notice to produce them, we say, the jury could not have inferred that, if produced, they would aid the defence. Presuming that there was nothing to aid the defence, was, in every sense, presuming just nothing at all.

But we contend that, upon notice to produce the books, from their non-production the jury might have been instructed to

Cross v. Bell.

draw a positive inference unfavorable to the defence, not as a *presumption of law*, but as a presumption of fact; a mere natural presumption. *Clifton* v. *United States*, 4 Howard's U. S. 247, 248. See, also, 3 Stark. Ev. 1253; 1 do. 33, 34, 389, 390; Greenl. Ev., sec. 44; 3 Stark. Ev. 1235, 1245.

EASTMAN, J. It must be considered as settled in this State that illegal interest may be recovered back in an action for money had and received. *Willie* v. *Green*, 2 N. H. 333; *Williams* v. *Hedley*, 8 East 378; *Browning* v. *Morris*, Cowper 792.

Such has undoubtedly been regarded as the law here ever since the decision of *Willie* v. *Green*; and *Richardson*, C. J., in that case says that the law on the subject is too clear to be disputed.

We are not aware of any other decision in this State upon this precise question, but many suits have been maintained upon the authority of that case, and the rulings are believed to have been uniform in sustaining that view of the law. It is placed upon the ground of public policy.

Upon the trial the court made two rulings, to which exceptions were taken, and which we will consider in their order.

First: the court charged the jury that they might infer, from the fact that the books were not produced, that they would not aid the defence, if produced. Upon this point there are many authorities, some of which we will consider.

Greenleaf says that the mere non-production of books upon notice has no other legal effect than to admit the other party to prove their contents by parol, unless under special circumstances. 1 Greenl. Ev., sec. 37; and he cites *Cooper* v. *Gibbons*, 3 Camp. 363, which sustains the position. Substantially to the same point are Roscoe's Cr. Ev. 11; *Life and Fire Ins. Co.* v. *Mechanic Fire Ins. Co.*, 7 Wendell 31; *Symington* v. *McLin*, 1 Devereux and Battles 291.

In *Clifton* v. *The United States*, 4 Howard 242, goods had been seized upon suspicion of being fraudulently imported. On the trial it was shown by the government that there was suffi-

cient ground for the opinion of the court that probable cause existed for the prosecution, and notice was given to the claimant to produce his books and accounts relating to those goods. This he declined to do, and it was held to be proper for the court to instruct the jury, that if the claimant withheld the testimony of his accounts and transactions with the parties abroad from whom he received the goods, they were at liberty to presume that, if produced, they would have operated unfavorably to his cause.

In *Thayer* v. *Middlesex Mu. Fire Ins. Co.*, 10 Pick. 329, *Shaw*, C. J., says : " The rule that upon the trial of controverted facts the party having the custody and control of books, documents and papers, shall, on notice, produce them, and that on refusal to do so the adverse party may give evidence of their contents, and that all inferences from such secondary evidence shall be taken most strongly against the party refusing to produce them, is a highly reasonable and beneficial rule, tending to the discovery of truth, and to the promotion of honesty, frankness and fair dealing, and ought not to be shackled or obstructed by strict constructions or technical niceties."

In *Jackson* v. *McVey*, 18 Johns. 330, the defendant gave general evidence that a deed, which was in court, in possession of the opposing party, who refused to produce it, had been in the possession of a witness who was upon the stand, and the witness testified that he had often perused the deed, and ever supposed that the premises in question were included in it. But on cross-examination he said that he could not recollect a single course stated in the deed, and that he did not know, but thought the premises were embraced in it. The circuit judge disregarded the testimony, but the Supreme Court, on a motion for a new trial, held that the testimony should have gone to the jury, with strong intimations that they ought to believe that the premises were included in the deed ; since, if they were not, the plaintiff, by producing it, could show with certainty how the fact was ; and that its non-production, the deed being in court, was very strong presumptive evidence against the plaintiff.

The rule to be extracted from the authorities would appear to

be this, that where the books or papers are shown to be in the hands of the opposing party, but no evidence is given of their contents, the refusal to produce them is not to be regarded as *prima facie* evidence that, if produced, they would prove what the party calling for them alleges they contain. In such a case there is no legal presumption as to their contents. But where, after notice and refusal to produce them, and it is shown or admitted that they are under the control of the party, and secondary evidence is given, and such evidence is imperfect, vague and uncertain, every intendment and presumption is to be made against the party who might remove all doubt by producing the higher evidence.

Before any presumption can be made against the party on the ground of refusal to produce, and having the possession of the books or papers, some general evidence of their contents, as applicable to the case, must be given.

The alleged usury in this case consisted in the addition of $200 to notes given for a debt of $1800; and upon the plaintiff's objecting that the notes were too large, the defendant replied, " there is our account and other deal — all is put in." Now, although this evidence might not be such as to raise a legal presumption against the defendant, or to make out a *prima facie* case that the books, if produced, would aid the plaintiff, yet we think that after such evidence, and notice to the party to produce the books, which appeared to be under the control of the defendants, the jury might and would infer, as a matter of fact, that the production of the books would not aid the defence. Such would be the natural effect upon the mind in considering such evidence; and unless, as matter of law, the court must say that such an inference shall not be drawn, the ruling must be sustained; for it was simply telling the jury that they might draw a negative inference, which was a natural consequence from the fact, and which in all probability they would have drawn without any intimation from the court to that effect. We are aware of no rule of law, nor do the authorities show that the jury might not take such a course. Upon the doctrine of *Clifton*

---
Cross *v.* Bell.
---

*v. The United States,* it would seem that the court might have instructed the jury that a legal presumption arose in favor of the plaintiff; but that is not the question as presented by this case, and the ruling did not go to that extent. So far, however, as the court went in the instructions given, we think that the authorities generally will sustain the ruling, and that the defendants have no good cause of complaint. It is not a case destitute of evidence, and does not fall within the rule in such cases. The plaintiff had shown that the payee of the notes had said in effect that his account was included in the notes, and it was this account that was called for; and if the books would have aided the defendants, they would no doubt have been produced.

With regard to the other instructions given to the jury — that it was not necessary for the plaintiff to make or prove a demand before suit brought, in order to recover — the ruling was correct. The defendants had in their possession money which rightfully belonged to the plaintiff, which their intestate illegally obtained, and which was wrongfully withheld. In such cases a demand before suit is not necessary.

It is a general rule that on the common money counts no proof of any special demand is necessary, and the service of the writ is deemed a demand. To this rule there are exceptions in regard to factors, agents and attorneys; but there is no exception where the money has been illegally received. *Dill* v. *Wareham,* 7 Met. 438; *Hunt* v. *Nevers,* 15 Pick. 505; *Wiggin* v. *Foss,* 4 N. H. 294.

Upon the whole, we are of opinion that the rulings may be sustained, and that there should be

*Judgment on the verdict.*