DAVIS vs. THE CHICAGO & NORTH-WESTERN RAILWAY COMPANY.

In an action to recover damages from a railroad company for injuries suffered by the plaintiff in leaving a train on which he had been a passenger, and alleged to have occurred from the negligence of the company's servants in not stopping the train at the station long enough to enable the plaintiff to leave it in safety, it was error for the court to refuse to instruct the jury that if the train had stopped "a sufficient time for the plaintiff to have left it upon the platform where passengers leaving the defendant's cars usually land, and had again started on its course and had passed said platform, and the plaintiff then left the platform of the car rather than be carried by, he was guilty of carelessness and could not recover in the action;" and that "if the train stopped a sufficient time to allow the plaintiff to get off, then the defendant was not guilty of negligence in its management," there being evidence in the case which made those instructions pertinent.

APPEAL from the Circuit Court for *Jefferson* County.

This action was brought to recover damages for injuries

suffered by the plaintiff in leaving a train of cars on the defendant's road near the Watertown station, the plaintiff having taken passage to that station. The complaint alleges that on the arrival of the train at said station, the plaintiff, without any delay or negligence, attempted to leave the train, but that the defendant, by its conductors, brakemen &c., having charge of the train, neglected to stop the same at said city of Watertown a sufficient length of time for the plaintiff to leave the cars in safety; that while he was in the act of leaving it, said train was suddenly put in motion, and the plaintiff, without any fault of his, was thrown violently upon the ground near the track, and his left hand thrown upon the rail, so that the wheels passed over and crushed it, &c.—Answer, a general denial.

On the trial, the plaintiff, as a witness in his own behalf, testified that he came to Watertown on the defendant's cars at the time mentioned in the complaint; was then sixty-seven years old; got aboard at the Menasha junction; there were two passenger cars; he occupied a seat near the middle of the forward passenger car; arrived at Watertown between eleven and twelve o'clock at night; some one cried out " Watertown !" at the rear end of the car he was in; he was then standing, and started immediately for the rear end of the car; got upon the platform of the car, and then upon the steps, when some one took hold of his shoulder and told him to hurry and get off or he would not get off at all; the person took hold of his shoulder and kept pushing him down; plaintiff told him that if they would give him time to get off he would, as this was where he wanted to stop. While he was on the lower step, some part of the car—he could not tell what part—caught in his pants, and threw him on the ground, on his face, with his head toward the back end of the train; his left hand was thrown upon the track and one wheel ran over it. There was no platform where he fell; it was south of the platform where passengers usually get on and off the cars. The cars were in motion when he got off;

his impression was that they did not come to a full stop; did not know how long he was in getting off; did not know that any other person than himself got off; there was no one on the platform but himself and the man that had his hand on his (plaintiff's) shoulder; thought it was the brakeman. The plaintiff further testified as to the extent of the injuries which he had received, &c. On cross-examination, he said he was sure the train did not stop at all; it was in motion when he started for the door, and when he got upon the platform and the steps. He was as sure of this as of any other fact he had stated in his direct testimony.—Henry Ranous, for the plaintiff, testified that he was in the defendant's employ at the time mentioned in the complaint, as baggage master at Watertown station; was at the depot that evening when the passenger train from the north arrived; the train was due at Watertown at ten o'clock and twenty minutes; it was fifteen or twenty minutes past eleven when it arrived that night; saw the plaintiff on the platform at the rear end of the forward passenger car, on the lower step of the car; there were others on the platform—one or two men behind him. No other passenger got off that night. The cars had passed the platform when he first saw the plaintiff. They were then in motion. The plaintiff was squat down on the lower step as if in the act of jumping off. Before witness saw the plaintiff, the cars had stopped long enough for any one to get off; and while they were stopped witness took off a trunk and a dry goods box.

The plaintiff having rested, the defendant moved for a nonsuit, which was denied. The defendant then introduced testimony tending to show that the train had stopped for a minute and a half, before the plaintiff came out upon the platform of the car; that when the train stopped, notice was given of the station in the car where the plaintiff was; and that no one in the employ of the defendant was upon the platform of that car, or was pushing or touching him when he left the car.—The remainder of the evidence need not be here stated. The defend-

ant asked the following instructions, which were refused: " 1. The testimony on the part of the defendant as to the negligence of the plaintiff contradicts the testimony of the latter, and unless you give greater credit to the plaintiff's testimony on this point than to that given on the part of the defendant, the plaintiff is not entitled to recover.   2. If the plaintiff was upon the platform of the defendant's car after the train was in motion, and got off from the same while thus in motion, he was guilty of carelessness, and cannot recover in this action.   3. If the jury believe from the evidence that the train of cars upon which the plaintiff had taken passage had stopped a sufficient time for the plaintiff to have left them upon the platform where passengers leaving the defendant's cars usually land, and had again started on their course, and had passed the platform provided by the defendant for passengers to get out of the cars upon, and that the plaintiff then left the platform of the car rather than be carried by, he was guilty of carelessness, and cannot recover in this action.   4. If the plaintiff undertook to get off the defendant's cars while they were in motion, and after they had passed the platform of the defendant, erected for the accommodation of passengers getting on and off defendant's cars, he was guilty of negligence, and cannot recover in this action.   5. In determining the preponderance of testimony, the testimony of witnesses who are not parties to and have no interest in the action, and are unimpeached, is entitled to more credit and weight than the testimony of a party to the suit.   6. If the jury believe from the evidence that the train stopped a sufficient time to allow the plaintiff to get off, then the defendant is not guilty of negligence.   7. The jury must be satisfied from the evidence that the plaintiff was injured by the cars being put suddenly in motion, or the plaintiff cannot recover.   8. The jury must be satisfied from the evidence that the defendant was guilty of negligence in suddenly starting its train of cars before they can find for the plaintiff."   The court charged the jury, among other things,

JANUARY TERM, 1864.    179

Davis vs. The Chicago & North-Western Railway Co.

"that the defendant was bound to exercise extraordinary care, and that the plaintiff was only bound to use ordinary care, such as a prudent man would use under the circumstances." The defendant excepted to so much of this instruction as relates to the care required of the plaintiff. The court also gave the following instructions to the jury, at defendant's request: "If the negligence of the plaintiff in any manner contributed to the injury complained of, he cannot recover. The plaintiff must show that he was in the exercise of due care at the time he was injured. If the testimony on that point is conflicting, the preponderance must be with the plaintiff or he cannot recover."

Verdict for the plaintiff; motion for a new trial overruled; and judgment upon the verdict; from which the defendant appealed.

*Enos & Hall*, for appellant, contended, among other things, that the motion for a nonsuit should have been granted. When the plaintiff rested, he had proven that it was his own carelessness or recklessness that caused the injury complained of. When a passenger, to avoid being carried by his stopping place, jumps off while the cars are in motion, and is injured, he cannot recover. *Damont v. R. R. Co.*, 9 La. Ann., 441; 23 Pa. St., 52, 147; *C. B. & Q. R. R. Co. v. Hazzard*, 26 Ill., 373; *Same v. Dewey*, id., 255. The last two cases hold that being upon the platform of a car while in motion is an act of carelessness. It is the duty of the court to determine from the evidence whether there was negligence. *Cornman v. Railway Co.*, Am. Law Reg. for Jan., 1860, p. 173; 24 N. Y., 431; 20 id., 73; 18 id., 422; 24 Pa. St., 465; 33 id., 318; 23 id., 147; 31 Ala., 501; 14 Johns., 307; *Trow v. Vt. Central R. R. Co.*, 24 Vt., 497; 8 Ohio St., 584. 2. It was error to refuse the third, fifth, seventh and eighth instructions asked by the defendant.

*Harlow Pease*, for respondent:

The second, third, fourth and sixth instructions asked by the defendant, involve the question of negligence, and were prop-

erly refused by the court. Negligence is a pure question of fact, to be passed upon by the jury. *G. & C. R. R. v. Yarwood*, 17 Ill., 509; *Same case*, 15 Ill., 406; *Quimby v. Vt. Central R. R.*, 23 Vt., 387; *Briggs v: Taylor*, 28 Vt., 180; *Patterson v. Wallace* (in House of Lords, 1853), 28 Eng. L. & E., 48. 2. The third instruction was correctly refused. It assumes a state of facts entirely different from that disclosed by the testimony. The case is not like those in which it was proved that passengers deliberately leaped from the cars to avoid being carried by the station. The plaintiff started from his seat as soon as the station was announced, and went directly to the platform at the rear end of the car, and was there ordered by the brakeman to get off quick, and was pushed along down the steps. The plaintiff was old and feeble, and was forced by the brakeman into a position from which he could not retreat if he would.

*By the Court*, COLE, J. It appears to us that the third and sixth instructions asked for on the part of the defendant were proper and should have been given to the jury. The third instruction was as follows: "If the jury believe from the evidence that the train of cars upon which the plaintiff had taken passage had stopped a sufficient time for the plaintiff to have left them upon the platform where passengers leaving the defendant's cars usually land, and had again started on their course, and had passed the platform provided by the defendant for passengers to get out of the cars upon, and that the plaintiff then left the platform of the car rather than be carried by, he was guilty of carelessness, and cannot recover in the action." The sixth instruction embraced essentially the same proposition in a more general form, that if the evidence showed that the train stopped a sufficient time to allow the plaintiff to get off, then the defendant was not guilty of negligence in that particular in the management of the train.

The gravamen of the complaint was, that the agents of the company, having charge of and conducting the train of cars

upon which the plaintiff was a passenger, did not exercise due care and attention to their duty, by failing to stop the train at the Watertown station, where he was to leave, a sufficient time to enable him to get from the cars in safety : but that while he was in the act of stepping from the cars, through the carelessness and negligence of such agents, the train was suddenly put in motion, whereby the plaintiff was thrown violently upon the ground and sustained the injury complained of. Thus it will be seen that the liability of the company is founded upon the improper management of the train at the Watertown station. The accident and injury, it is alleged, happened in consequence of the omission of the agents of the company to stop the train a sufficient length of time at that place to enable the plaintiff to get from and leave the cars in safety. That point was the plaintiff's destination and where he wished to leave the train. Of course it was the duty of the agents of the company to stop the train at that station a suitable and reasonable time to enable him to do so. If they did not, they were certainly guilty of carelessness and inattention to the lives and safety of the passengers desiring to leave the train at that place. This is very obvious. On the contrary, if the cars were stopped at the platform at that station long enough to give the plaintiff a reasonable opportunity to leave them in safety, and he did not, but persisted in getting off from the cars after they had again started rather than be carried by, and in consequence was thrown down and injured, then it would seem that the company ought not to be held liable. In that case it could not reasonably be said that there was any negligence or want of care in the management of the train, in stopping at or leaving the station, the plaintiff being notified that that was the place he wished to stop at, and ample time, in view of the hour and darkness, given him to leave the train. And if under such circumstances the plaintiff did not leave the train when he should, a reasonable time having been given him for that purpose, but was foolhardy enough to jump off after the cars had again start-

ed on their course, and was injured, then "certainly he was a co-operating cause of his own misfortune," and ought not to recover. It seems to be a well established fact in the case, that the cars were in motion when the plaintiff came out of the car in which he had been riding. The cars arrived at the Watertown station about a quarter past eleven at night, and were considerably behind time. The plaintiff states, in his testimony, that when the station was announced he started toward the rear end of the car to get off: that he got on to the platform at the end of the car, and then upon the steps, when some one took hold of his shoulder and told him to hurry and get off or he would not get off at all. He goes on to say that the person took hold of his shoulder and kept pushing him down, and that he told such person that if they would give him time to get off he would, as there was where he wanted to stop. He says the cars were in motion when he stepped off, and that he did not know that they had stopped at all. It is perhaps well to remark here, that there is no allegation whatever in the complaint that the plaintiff was injured by being pushed off the steps of the cars by the agents of the company while the train was in motion. Such conduct would be utterly indefensible under any circumstances. The plaintiff, however, does not claim to recover upon that ground. He alleges that the train was not stopped at the Watertown station a sufficient length of time to enable him to get from the cars in safety, and that while stepping from and leaving the cars, through the carelessness of the conductors of the train, it was suddenly put in motion, whereby he was thrown violently upon the ground and injured. According to this, the accident was occasioned by the agents omitting to perform the most obvious duty, namely, stopping the train long enough to give the plaintiff a reasonable opportunity to leave the cars at the usual stopping place; and the plaintiff's evidence is mainly directed to sustain the action on that ground. On the other side there was testimony which tended to show that the train was stopped at that station

long enough to enable the plaintiff to leave it in safety, and that there was no want of care or diligence on the part of the company. And it was doubtless to this conflict of the testimony that the above instructions were intended to apply. They met the case attempted to be established by the company, and related to the facts upon which it relied to exonerate it from all liability. For these reasons we think they should have been given to the jury.

We do not discover any error in refusing or giving other instructions, which we deem material.

The judgment of the circuit court is reversed, and a new trial ordered.