HARTWIG, Administratrix, vs. THE CHICAGO & NORTHWESTERN
RAILWAY COMPANY.

*April 24 — May 11, 1880.*

RAILROADS: NEGLIGENCE: EVIDENCE. *(1, 2) Proof of negligence in
stopping train for passengers at improper point. (4, 5) Contributory
negligence. (6) Degree of proof required in actions for negligence.*
VERDICT. *(3) Presumptions from general verdict.*

1. About half-past nine o'clock on a dark, rainy and snowy night, plaintiff
went to defendant's depot at a village, for the purpose of taking the
caboose car at the rear end of defendant's freight train, for his place of
residence. The train stopped with the caboose car several rods north of
the depot platform, and two car-lengths north of a cattle-guard, which
was constructed across both tracks of the road and between them, and
was partly uncovered. Plaintiff asked the night-watchman whether he
would have to walk that far back to get on the caboose, and was
answered affirmatively; and while on his way to the caboose met the
conductor with a lantern accompanying lady passengers from the ca-
boose; nothing was said to him by the conductor; and before plaintiff
reached the caboose, he fell into the open cattle-guard, and was injured.
He had been in the habit of taking this train with the caboose standing
north of the platform, but had never taken it with the caboose standing
north of the cattle-guard; and he had never noticed the situation and
condition of the cattle-guard, nor did he know before the accident that
the caboose stood north of it. *Held,* that these facts warranted the jury
in finding that defendant was guilty of negligence, and plaintiff free
from contributory negligence.
2. The question whether the cattle-guard was properly situated and con-
structed, is immaterial in such a case, defendant being chargeable with
negligence on the facts stated, independently of that question.
3. In an action for injuries from negligence, where proper instructions have
been given, and there is a general verdict for the plaintiff, the jury must
be presumed to have passed upon both the question of defendant's neg-
ligence, and that of plaintiff's contributory negligence.
4. There was no error in refusing to charge that plaintiff, if informed that
the train would not be hauled up to the platform to allow him to get on,
"had no right to take another way of getting on, and put himself in
peril," and that if he did so and was hurt, he could not recover.
5. The court gave the above instruction modified by adding, "if you find

that he put himself in such peril." *Held*, that this must be understood as meaning "if you find that he *knowingly* put himself in such peril;" and in this there was no error against defendant.

6. In a civil action, the evidence is not required to be such as establishes beyond a doubt the facts relied upon for a recovery.

APPEAL from the County Court of *Dodge* County.

This action was brought by Emil Hartwig, for injuries to his person alleged to have been caused by defendant's negligence. After the death of said Emil, the administratrix of his estate, *Mary Hartwig*, was substituted as plaintiff. The complaint alleges that on the 30th of March, 1878, and for a long time prior thereto, there was a large, deep, uncovered excavation, with perpendicular walls of stone, extending across the road-bed and under the main and side tracks of said railway, on the defendant's depot grounds, in the village of Juneau; that defendant had constructed said excavation more than two years before, and had from that time to the present negligently and wrongfully maintained the same, without any covering, barrier, protection or warning to prevent persons from falling into it; that on the evening of said 30th of March, Emil Hartwig was lawfully walking upon said road-bed, between the main and side tracks, on said depot grounds, going from defendant's depot to the rear end of a train of cars, standing upon said main track on said grounds, for the purpose of taking passage upon said train from the village of Juneau to the city of Watertown; that while so doing, and without any fault on his part, he fell into said excavation and received certain described injuries, by reason of which he was subjected to certain specified damages; that said train was one upon which passengers were usually received and carried by defendant; that at the time mentioned defendant had the control and management of said depot grounds, depot, road-bed, railway tracks and train; and that by reason of the negligence and wrongful acts of the defendant in constructing and maintaining said excavation without any covering and in an unsafe

condition, as above set forth, said Emil Hartwig received the injuries mentioned, to his damage, etc.

The answer was, in substance, that the excavation referred to was a cattle-guard, constructed and maintained at the proper place and in a proper manner, and that any injury sustained by Emil Hartwig at the time and place specified was caused by his own negligence.

After plaintiff's evidence was in, a motion for a nonsuit was denied; and defendant introduced evidence to show that the cattle-guard in question was on the north side of a highway running east and west, and was similar in size and mode of construction to the cattle-guards in ordinary use on railroads in this country; and that guards so constructed are less dangerous than those which have triangular rails over the top. A witness for plaintiff then testified that he had had some experience in building cattle-guards on railroads, and that in his opinion the safest way was to cover them with three-cornered pieces of timber.

The other facts established by the evidence, as understood by this court, are sufficiently stated in the opinion.

The court, by its instructions, submitted to the jury the questions, whether the excavation into which Emil Hartwig had fallen was a cattle-guard; whether, if so, the defendant was guilty of any negligence in locating it where it was or in the mode of its construction and maintenance; and whether Emil Hartwig was guilty of any contributory negligence in leaving the depot and taking the train as he did. The court also said: "If you find that the railway company has been guilty of no negligence in the construction and maintenance of the cattle-guard, and in keeping the same in the manner they do, then you will find for the defendant. But if you find that the company is guilty of negligence in building, constructing and maintaining the cattle-guard in the manner it has done, and that by reason of such negligence the plaintiff received an injury, then you will find for the plaintiff, pro-

vided you find that he was guilty of no negligence himself in leaving the depot on a dark and stormy night and walking down the track to the caboose to take the train. You must not only find that defendant is guilty of negligence, in order to find for the plaintiff, but you must find . . . that plaintiff did not contribute to the negligence himself." " So if you find that the railroad company is guilty of negligence as stated before, and that Mr. Hartwig was guilty of negligence in leaving the depot and taking the train, then you will find for the defendant. If you find that the company is guilty of negligence in making and maintaining said cattle-guard, and that plaintiff was not guilty of negligence on his part, and that by means of the negligence of the company, plaintiff received the injury, then you will find for the plaintiff." " The question of fact is for you to determine: On the facts in this case, is defendant guilty of negligence in making the cattle-guard and leaving it in the shape it is? If it is not, then you find for defendant. If defendant is guilty of such negligence, and Hartwig was guilty of no negligence, then you find for the plaintiff."

The following instructions asked on defendant's behalf were refused: 1. " The evidence is not contradicted that the construction and condition of the cattle-guard were in accordance with the construction and condition of cattle-guards in general use in the country; and the question of its proper construction and condition is withdrawn from the jury." 2. " If plaintiff was informed, on the night in question, that the train would not be hauled up to the depot platform to allow him to get on the train, he had, no right to take another way to get on the cars, and put himself in peril; and if he did, and was hurt, he cannot hold the company liable for such injuries." 3. " If the testimony leaves the question of plaintiff's negligence or that of the defendant doubtful, plaintiff cannot recover." The court, however, gave the second of these instructions modified by adding, " if you find he put himself in

such peril." It also charged the jury as follows: "The statute of Wisconsin requires defendant to construct and maintain cattle-guards at all highway crossings, and connect its fences therewith to prevent cattle and other animals from going on its railroad; and if the cattle-guard in question was built so as to prevent cattle and other animals from going on defendant's railway from the highway, and in a manner in general use, and in good condition of its kind, then plaintiff cannot recover on the claim in his complaint that the cattle-guard was improper and left negligently by the defendant. The statute does not prescribe the kind of cattle-guards that the railroad shall construct and use, excepting only that they shall be such as, with the fence connected with them, shall prevent cattle, etc., from going on the track. The company may use any kind of cattle-guards that will accomplish that purpose, if they are such as are in ordinary use by railroads."

There was a verdict for the plaintiff for $100 damages; a new trial was refused; and defendant appealed from a judgment on the verdict.

*F. J. Lamb*, for the appellant.

*Harlow Pease*, for the respondent.

ORTON, J. This case was presented to the court, by the learned counsel on both sides, mainly on the question of the negligence of the company in the location, construction and condition of its cattle-guard at the place of the accident. We think that this question was quite immaterial and of no consequence, in view of the evidence and instructions applicable to another and vastly the more important question, of the negligence of the company in stopping the train with the passenger car north of and beyond the cattle-guard so constructed and situated, whether properly so or not. It may be conceded that the cattle-guard was properly constructed and situated, and kept in proper condition, and yet, if it be clearly proved that the company was negligent in stopping the passenger car

beyond the cattle-guard under the circumstances and at the time, and that the plaintiff was not negligent in attempting to go aboard of the car where it was stopped and in passing over the cattle-guard, and the jury can be presumed to have passed upon the question, the verdict ought not to be disturbed. The undisputed evidence in this respect, and relating to this question, proves a case in principle like several cases which have been decided by this court, and in which the verdict has been sustained.

The instruction applicable to this question asked by the defendant's counsel, was: "If the plaintiff was informed on the night in question that the train would not be hauled up to the depot platform to allow him to get on the train, he had no right to take another way of getting on the cars, and put himself in peril; and if he did, and was hurt, he cannot hold the company legally liable for such injuries." This instruction, in this form, was refused, but the court gave it with the addition of these words: "if you find he put himself in such peril." These additional words were, no doubt, intended by the court as a qualification of the instruction, and to mean, "if you find he *knowingly* put himself in such peril," or if he knew or had reason to apprehend the peril and danger. If it does not mean this, it can mean nothing but a repetition of the instruction already refused, and this ought not to be presumed against the consistency of the court, and when the instruction asked, without such qualification, was clearly erroneous. The following general instruction was given: "You must not only find that the defendant is guilty of negligence, in order to find for the plaintiff, but you must find that the plaintiff did not contribute to the negligence himself."

By this instruction the jury was left to find the negligence of the company from any proper evidence. It was in evidence that on the night in question, about half past 9 o'clock, when it was very stormy, dark, raining and snowing, the plaintiff went to the depot at the village of Juneau, for the purpose of

taking the caboose car at the rear end of the company's freight train for Watertown, his residence. The train stopped further north than usual, with the caboose car two car-lengths north of the cattle-guard, and several rods north of the depot platform, and the cattle-guard was constructed across and over both tracks of the road, and between the same, and partly uncovered. The plaintiff asked the night-watchman, who was at the depot, whether he had to walk that far back to get on the caboose, and the watchman replied, "I guess you have," and expressed the opinion that the train would not be hauled up and stopped at the platform for passengers to get aboard. The plaintiff then started towards the caboose, and on his way met the conductor with a lantern accompanying two lady passengers, who had just left the caboose where it stood; and nothing was said to him by the conductor, and he passed on; and before he reached the caboose, he suddenly and unexpectedly walked and fell into the open cattle-guard between the tracks, which was of considerable depth, and was injured. He was put on the caboose, without hauling up to the platform, and carried to Watertown.

The plaintiff had been in the habit of taking this same train with the caboose some distance north of the platform, but had never taken it standing where he did on this night, north of the cattle guard; and it had not been stopped at this point except for about ten days before; and the plaintiff had never noticed and had no knowledge of the situation and condition of the cattle-guard, and did not know on this occasion that the caboose had been stopped north of it. These facts present a much stronger case against the company than many cases decided by this court, in which the verdict was not disturbed.

In *Delamatyr et al. v. The Milwaukee & P. du Ch. Railroad Co.*, 24 Wis., 578, Mr. Justice COLE uses the following language, applicable to this case: " Of course it was the duty of the company to afford passengers reasonable facilities for alighting from the cars, both by a reasonably safe platform,

and *by stopping the train in such a manner that they may avail themselves of it without unnecessary exposure.*" In that case the plaintiff was told by the brakeman, after the train had stopped in an improper place, to get off where, in attempting to do so, she was injured.

In *Davis v. The C. & N. W. Railway Co.*, 18 Wis., 175, the cars were not stopped at Watertown depot sufficiently long for the plaintiff to get off safely; and when attempting to do so he was injured; and the defendant was held negligent, and the plaintiff not.

In *Curtis et ux. v. The Detroit & Milwaukee Railroad Co.*, 27 Wis., 158, the plaintiff attempted to get on the sleeping car in the night, where it had temporarily stopped, before reaching the platform, in such a manner as to lead passengers to suppose it would not again be stopped and in the proper place, and was injured in the attempt by the sudden starting of the train. The plaintiff was held not guilty of want of ordinary care, and the company was held liable through negligence.

In a late case of *Quaife et ux. v. The C. & N. W. Railway Co.*, 48 Wis., 513, the plaintiff attempted to get aboard of the ladies' car, which had been stopped before it had reached the platform, and walked off the platform in the dark, and was injured. Instructions in respect to the duty of the company to haul up to the platform, or to have lights, and to furnish other means to protect passengers, and to take proper precautions against accidents, in such a place, were spoken of approvingly by Mr. Justice TAYLOR in his opinion; and there was scarcely a question of the plaintiff's right to recover upon the facts, raised in this court, by exception to such instructions or otherwise.

The jury must be presumed to have passed upon these facts, and found the company negligent and the plaintiff not, by their general verdict for the plaintiff. There can be no question that the company was careless and negligent in stopping

this train where it did for passengers to get off and on, and where to do so required them to pass over in the dark such a dangerous place as this open cattle-guard, without precaution or warning; and in stopping the passenger car in such a place, and leading passengers to suppose they must get on there or not go on the train at all at that time, and leading them to suppose that the way to the passenger car was clear and safe and without danger. The verdict for the plaintiff in such a case could not be disturbed without overruling many cases in this court, and violating the most obvious principles of law.

The question as to the degree of certainty of evidence in such a case, was distinctly passed upon in the last above case by this court, and it was held that evidence beyond a doubt in a civil action was not necessary.

This disposition of the case renders it unnecessary to pass upon the question as to whether such an action can be revived after judgment for the purpose of an appeal.

*By the Court.* — The judgment of the county court is affirmed, with costs.