336 So.2d 1330 (1976)
Carlos LaGRAVE and Catherine W. LaGrave
v.
George JONES and Richard Grogan.
SC 1667.
Supreme Court of Alabama.
August 20, 1976.
*1331 Vincent F. Kilborn, Mobile, for appellants.
Tonsmeire, McFadden & Riley and J. H. Fernandez, Mobile, for appellees.
SHORES, Justice.
In May, 1975, the LaGraves (hereinafter sellers) executed an instrument and delivered the same to Jones and Grogan (hereinafter buyers), which provided:
". . . I hereby grant to you [buyers] the option to purchase that certain real property situated in the City and County of Mobile, Alabama described as Lot[s] 5 and 6, Block 4, of Pinehurst Subdivision . . .
"This purchase agreement is granted on the following terms and conditions:
"1. The agreement to purchase the said property shall expire at midnight on the 10th day of July, 1975, unless prior to such expiration time you have exercised the said agreement as hereinafter provided.
"2. This agreement is subject to purchaser being able to secure the zoning classification change for subject property to provide the erection of an office building whose purpose it is to conduct Insurance business.
"3. The purchase price shall be ELEVEN THOUSAND FIVE HUNDRED AND NO/100 ($11,500.00) DOLLARS at closing.
"If the zoning of the aforementioned property is not accomplished during the option period, then the option monies shall be refunded. If the zoning is accomplished, a warranty deed will be issued and the option monies will apply to the purchase price and the down payment at closing."
On May 5, 1975, the buyers applied to the Board of Adjustment of the City of Mobile for a use variance "To erect a one story office building of approx 1000 to 1200 sq ft to be used as an insurance office." At the time of the option, the lots were zoned R-1, Residential.
On June 2, 1975, the Board of Adjustment denied the application for a use variance and notified the buyers of that fact on June 3rd. The buyers appealed the denial of the use variance and notified the sellers on June 9th that they were thereby exercising the option to purchase the lots. By letter of July 10th, the buyers again notified the sellers that the option was being exercised and that the buyers were willing to accept the property under the existing zoning classification, "since they have taken a formal appeal from the adverse decision rendered by the Board of Adjustment."
The sellers refused to convey the property and returned the $1,000 down payment to the buyers on July 10th, the last day for exercising the option. The buyers refused the refund and brought this suit for specific performance.
The buyers filed motion for summary judgment based on the pleading. The sellers filed a motion for summary judgment supported by an affidavit, which was countered by the buyers by affidavit. The trial court granted summary judgment in favor of the buyers and the sellers appealed.

*1332 The sellers' affidavit asserted that ". . . The change in zoning classification mentioned in Paragraph 2 of the agreement if accomplished by the [buyers] would have permitted commercial usage, to-wit, an insurance office building and would have materially benefited me, as it would have changed the character of the area from residential to commercial and would have made it easier for me to commercially develop my nearby property. This benefit to me in changing the zoning of Lots 5 and 6 was one of the inducements in the signing of the agreement by myself and my wife."
The buyers' counter-affidavit stated in part:
". . . Prior to May, 1975, we had negotiated with Mr. Carlos LaGrave. . . to purchase lots five and six of the Pinehurst Subdivision. During these negotiations we were aware that the [sellers] owned other nearby lots, in fact, the defendant Carlos LaGrave told us he had sold some nearby property to a dentist who wanted to build an office in the area. Nothing was said by either of the defendants before, during, or at the time of their presentation to us of the option to purchase which is the subject matter of this suit to indicate that the defendants were at all interested in the zoning variance being obtained. At all times it was our understanding that the clause allowing the return of the option monies in the event a variance wasn't obtained and making the option subject to obtaining such a variance was for our exclusive benefit because we would have no use for the property if we could not construct thereon an insurance office. In fact, Richard Grogan specifically requested of defendant Carlos LaGrave that such a clause be included in the option. When the initial request for a variance was denied, we decided to exercise the option and purchase the property hoping to secure such a variance in the future. We are presently attempting to secure such a variance."
The sellers concede that if the condition for securing a zoning variance was for the exclusive benefit of the buyers, then they have the right to waive such a condition, and, of course, that is true.
"While a party to a contract may not waive stipulations in favor of the other party, or rights to which the other party is entitled, he may waive contractual provisions for his benefit. . . ." 17A C.J.S. Contracts § 491.
But, the sellers contend that the condition was for the benefit of both the buyers and the sellers, which assertion they make in their affidavit. This, they say, presents a genuine issue of a material fact, making the ruling of the trial court in granting the buyers' motion for summary judgment erroneous.
Whether such conditions are for the benefit of the buyer, or the seller, or both, must be determined under the facts and circumstances of each case and, of course, by the language of the agreement entered into between them.
We think it is clear from the language of the agreement and the undisputed facts presented by the respective affidavits that this provision was inserted in the contract for the benefit of the buyers. The Supreme Court of Pennsylvania, presented with an argument similar to that advanced by the sellers here, i.e., that the provision was intended for the mutual benefit of the parties, said in Funke v. Paist, 356 Pa. 594, 52 A.2d 655, 656 (1947):
"`. . . it seems clear that the contingency clause was included in the agreement of sale solely at the suggestion and for the benefit and protection of the plaintiff [buyer] . . . It was only natural that he did not desire to bind himself to purchase a property of which he could make no use. On the other hand, it is difficult to see of what use or benefit such a provision could possibly be to the defendants, the sellers. Once they sold their property, their interest in its use would naturally terminate. The only reason advanced now is that it would afford neighboring property owners an opportunity to object to the use plaintiff *1333 intended making of the property. This appears to be more of an afterthought in defense, rather than a reason for relying on the clause at the time the agreement was signed. Consequently, we cannot agree that the clause was included for the mutual benefit of both vendors and vendee.'"
The sellers here contend that their nearby property, other lots in the same subdivision, would be benefited because, as Mr. LaGrave said in his affidavit ". . . it would have changed the character of the area from residential to commercial and would have made it easier for me to commercially develop my nearby property."
The fallacy with this argument is found in the undisputed facts adduced by the affidavits of both parties. The agreement charged the buyers with attempting to get the Board of Adjustment to issue a use variance as to Lots 5 and 6 of Pinehurst Subdivision. Such a use variance would not have affected the zoning classification of other lots in this subdivision which the sellers owned and which were "nearby" Lots 5 and 6. Had the variance been granted, Mr. LaGrave would not have been able to commercially develop his property. We can find nothing to indicate that the parties intended this condition in the option agreement for the benefit of the sellers. By this, we do not mean that such provisions are always for the benefit of the buyer. Under proper circumstances, such a provision could benefit both parties. Indeed, it is conceivable that only the seller would gain a benefit by such a provision.
In Godfrey Co. v. Crawford, 23 Wis.2d 44, 126 N.W.2d 495, 496 (1964), the instrument had the following proviso:
"`The Buyer shall be joined by the Seller and Gary F. Krause and Virginia Krause (owners of the adjacent . . . premises) in petitioning the Milwaukee Common Council for certain revisions in zoning that will permit the development and construction of facilities shown attached and marked Exhibit "D"; such petition shall be filed on or before January 3, 1963, and in the event the petition for rezoning is denied or cannot be consummated on or before March 1, 1963, then in that event this offer to purchase shall become null and void and all monies paid hereunder shall be returned to the Buyer.

"`. . .`"
Prior to March 1, 1963, the buyer notified the sellers that it waived the rezoning condition and stood ready to complete the purchase, and tendered the balance of the purchase price, which the sellers refused. There, the Wisconsin Court found that the provision as to time was for the benefit of the sellers, because the failure to get the property rezoned within the option period terminated the sellers' liability on the contract, and left the sellers free to sell the property to someone else at the end of the option period. However, in that case the buyer waived the condition prior to the end of the option period. The court said:
"The fact that this particular provision is held to be for the benefit of the sellers as well as the buyer, however, does not in itself preclude the buyer from waiving prior to March 1, 1963, the condition that the zoning revision be consummated by March 1, 1963. This is because it is alleged in the amended complaint that the zoning change was for the protection of the buyer, and the general rule is that a party to a contract can waive a condition that is for his benefit. [Citations Omitted]
"By permitting the buyer to waive the condition with respect to zoning revision, providing such waiver occurs prior to the specified cut-off date of March 1, 1963, there is no interference with the protection afforded sellers by the provision in the contract that, if the zoning revision is not consummated by that date, the contract is rendered null and void. The prior waiver has the same effect as a consummated zoning revision insofar as the rights of the sellers are concerned. In either event the buyer is absolutely obligated to pay the balance of purchase *1334 price on the closing date of March 1, 1963.. . ." (126 N.W.2d at 498)
Cases from other jurisdictions are collated in 76 A.L.R.2d 1195. Some courts hold that such provisions are for the benefit of the buyer; and some hold that they are for the benefit of both parties; but, in every case which we have found, the determination was made by looking to the contract between the parties and considering the circumstances of each case. Such, we think, is a sound approach.
Looking to the written instrument in this case and the affidavits offered by both sides in support of their respective motions for summary judgment, we think the trial court correctly held that the provision in this case was inserted for the benefit of the buyers and, hence, enabled them to waive that condition before the option expired. There is nothing to support the sellers' contention that their nearby property would benefit from the use variance, if granted as to the lots subject to the option agreement.
The judgment appealed from is, therefore, affirmed.
AFFIRMED.
BLOODWORTH, FAULKNER, JONES, ALMON, EMBRY and BEATTY, JJ., concur.
MADDOX, J., dissents.
HEFLIN, C.J., not sitting.
MADDOX, Justice (dissenting).
Plaintiffs' motion for summary judgment was based only "on the pleadings." Defendants' affidavit, which was filed in opposition to plaintiffs' motion, states:
"* * * The change in zoning classification mentioned in Paragraph 2 of the agreement if accomplished by the Plaintiffs would have permitted commercial usage, to-wit, an insurance office building and would have materially benefited me, as it would have changed the character of the area from residential to commercial and would have made it easier for me to commercially develop my nearby property. This benefit to me in changing the zoning of Lots 5 and 6 was one of the inducements in the signing of the agreement by myself and my wife." [Emphasis added.]
The majority concludes as a matter of law that the contract terms show the condition here was for the benefit of the buyers. I fail to see how the majority can so conclude, when the sellers dispute that, and the sellers' affidavit is the only evidence on this issue which could be legally considered by the trial court.
Since buyers and sellers claim that the "zoning change" condition was for their benefit, there was a disputed issue of fact which should not be resolved except by a trial on the merits. Consequently, I respectfully dissent.